(January 27, 1900.)

FIRST NATIONAL BANK OF POCATELLO v. C. BUNT-ING & CO., BANKERS, C. E. THUM, RECEIVER, BING-HAM, CUSTER AND FREMONT COUNTIES, INTER-VENERS.

[59 Pac. 929, 1106.]

PUBLIC MONEYS—DEPOSIT IN BANK, TRUST FUNDS—RECEIVERS.—Public moneys deposited in a bank in violation of law are trust funds, do not become the property or assets of such bank, and remain trust funds with title in the true owner after the appointment of a receiver and insolvency of the bank.   *State v. Thum,* 6 Idaho, 323, 55 Pac. 858, affirmed.

ESTOPPEL.—A county whose funds have been unlawfully deposited in a bank, is not estopped from claiming such funds as a trust fund, by reason of its treasurer having received a *pro rata* payment thereon in common with general creditors.

RIGHT OF RECEIVERS TO APPEAL—COSTS.—A receiver has no right to appeal from an order or judgment made in the action in which he is appointed, without permission of the court appointing him, when he has no personal interest in such order or judgment, and, if he does so, the appeals should be dismissed at his personal cost, and without cost to the estate in his hands.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

E. E. Chalmers, for Appellant.

The moneys in question were never a trust fund, and were never in a condition to be claimed or established as a trust fund,

and the court, therefore, erred in ordering them paid in preference to the claims of the other general creditors of said bank, said moneys having been on general deposit in said bank, the relation of debtor and creditor, only, existed between said bank and these respective respondents. (See *Janin v. London, etc. Bank,* 92 Cal. 14, 27 Am. St. Rep. 82, 27 Pac. 1100; *State v. Buttles,* 3 Ohio St. 309; *Bank of Marysville v. Windischmuhlhauser etc. Co.,* 50 Ohio St. 151, 40 Am. St. Rep. 660, 33 N. E. 1054; *Henry v. Martin,* 88 Wis. 367, 60 N. W. 263; *McLain v. Wallace,* 103 Ind. 562, 5 N. E. 911; *Alston v. State,* 92 Ala. 124, 9 South, 732; *State v. Keim,* 8 Neb. 63; *State v. Bartley,* 39 Neb. 353, 58 N. W. 172-176; *State v. Mechanics' etc. Inst.,* 1 Am. & Eng. Corp. Cas. 573; *Balbach v. Frelinghuysen,* 15 Fed. 675; 5 Thompson on Corporations, secs. 7098, 7101; Story on Bailments, Bennett's ed., sec. 88; *Ruffin v. Board of County Commrs.,* 69 N. C. 498, 509; *Brahm v. Adkins,* 77 Ill. 263; *Keene v. Collier,* 1 Met. (Ky.) 415; *Multnomah County v. Bank,* 61 Fed. 914; *State v. Foster,* 5 Wyo. 199, 63 Am. St. Rep. 47, 38 Pac. 926; *Mutual Acc. Assn. v. Jacobs,* 141 Ill. 261, 33 Am. St. Rep. 302, 31 N. E. 414; *National Bank v. Graham,* 100 U. S. 699-703; *Shute v. Hinman,* 34 Or. 578, 56 Pac. 412, 58 Pac. 882.) The respondents having made their election and received and accepted the dividend declared by the receiver of the insolvent corporation, are estopped to assert the claims here made or to claim the money as a trust fund. (Bigelow on Estoppel, 562-579; Perry on Trusts, 371; *Hanly v. Kelly,* 62 Cal. 155; *McAdow v. Black,* 4 Mont. 475, 1 Pac. 751; *Denver etc. Co. v. Middaugh,* 12 Colo. 434, 13 Am. St. Rep. 234, 21 Pac. 565; *Brundage v. Home Sav. etc. Assn.,* 11 Wash. 277, 39 Pac. 666; *Boulder etc. Ditch Co. v. Lower Boulder Ditch Co.,* 22 Colo. 115, 43 Pac. 540; *Scholey v. Rew,* 23 Wall. 331, 23 L. ed. 99; *Crook v. Bank of Barraboo,* 83 Wis. 31, 35 Am. St. Rep. 17, 52 N. W. 1131; *Wood v. Bullard,* 151 Mass. 324, 25 N. E. 67, 7 L. R. A. 304; *Zimmermann v. Lebo,* 151 Pa. St. 345, 24 Atl. 1082, 17 L. R. A. 536; *Burhans v. School Dist. 1 of Canton,* 24 App. Div. 429, 48 N. Y. Supp. 702; *Watkins v. National Bank of Lawrence,* 51 Kan. 254, 32 Pac. 914; *Chapman v. Forsythe,* 2 How. 202, 11 L. ed. 236; *Clay v. Smith,* 3 Pet. 411, 7 L. ed.

723.)    Estoppel may be invoked against a county.    (*Leaven-worth Co. v. Barnes,* 94 U. S. 70, 24 L. ed. 63.)

N. H. Clark, for Bingham and Fremont Counties.

"The treasurer and other officers of Bingham, Custer and Fremont counties have been accustomed to keep the county funds of their respective counties on deposit in defendant's bank, and at the time of the appointment of said receiver they each had a large sum of money on deposit there." Now as to this state of facts there is no contention but what these were public funds deposited in the bank belonging to the respective counties. And that the money was on deposit there at the time said receiver was appointed. We submit that said public moneys were a trust fund. (See *State v. Thum,* 6 Idaho, 323, 55 Pac. 858, causes there cited.) If the said counties had received said dividends and the county commissioners, with full knowledge of such receipt had ratified the action of their treasurer in receiving said moneys, that this would not by ratification make such deposit a general deposit or estop the county from claiming it as a trust fund. A corporation cannot, by ratification, do that which is *ultra vires* which they could not have done in the first instance. A corporation is not estopped to claim that an act done, if without the authority of law, is *ultra vires.* (*Dunbar v. Board of Commrs. of Canyon Co.,* 5 Idaho, 407, 49 Pac. 409; *De Mill v. Moffatt,* 49 Mich. 125, 13 N. W. 387; *Guichard v. Brande,* 57 Wis. 534, 15 N. W. 764.)

W. E. Borah, for Custer County.

The first contention made by appellant is that the moneys in question, being deposited by general deposit, could not constitute a trust fund, or, in other words, that by reason of said general deposit, the relation of debtor and creditor arose between the bank and the county. This is the same question precisely, every phase of which was passed upon in the state case. In other words, it simply raises the question as to the status of these moneys when deposited, which question has been settled by the decision already referred to. While the counsel for appellant do not so state in their brief, we assume from the line of authorities cited that they will ask the court to change that

decision. But as the same cases are cited, with some three or four additional authorities, which were cited in the state case and there reviewed, we will not burden the brief with a review of appellant's citations here. Suffice it to say that under our statutes many of the authorities cited are without any application and the matter has been put at rest in our own supreme court. (*State v. Thum,* 6 Idaho, 323, 55 Pac. 858.) · There is a long line of authorities supporting this opinion. (*Farmers' Bank v. King,* 57 Pa. St. 202, 98 Am. Dec. 215; *Independent Dist. of Boyer v. King,* 80 Iowa, 497, 45 N. W. 909; *State v. Midland Bank,* 52 Neb. 1, 66 Am. St. Rep. 484, 71 N. W. 1011; *Kimmel v. Dickson,* 5 S. Dak. 221, 49 Am. St. Rep. 869, 58 N. W. 561, 25 L. R. A. 309; *Hubbard v. Manufacturing Co.,* 53 Kan. 637, 36 Pac. 1053, 37 Pac. 625; *Ryan v. Phillips,* 3 Kan. App. 704, 44 Pac. 909; *City v. Jordan,* 55 Kan. 124, 39 Pac. 1030; *Wolffe v. State,* 79 Ala. 201, 58 Am. Rep. 590; *First Nat. Bank v. Hummell,* 14 Colo. 259, 20 Am. St. Rep. 257, 23 Pac. 986; *Winslow v. Harriman Co.* (Tenn.), 42 S. W. 698; *Baker v. Bank,* 100 N. Y. 31, 53 Am. Rep. 150, 2 N. E. 452; *Burnett v. Bank,* 38 Mich. 630; Boone on Banking, sec. 62.) There is no principle of estoppel in this case, as an estoppel is based upon the fact that a party has at one time so acted or asserted a claim that to permit him to act or assert to the contrary at another time would injure another party—that is, that it would in effect be a fraud upon the other party. (Herman on Estoppel, 6; *Leonard v. Insurance Co.,* 97 Ind. 299; *Yates v. Hurd,* 8 Colo. 343, 8 Pac. 579.) The doctrine of estoppel does not apply to contracts which are forbidden by law or contrary to public policy. (*Franklin Nat. Bank v. Whitehead,* 149 Ind. 560, 63 Am. St. Rep. 302, 49 N. E. 592, 39 L. R. A. 725; *Hibbard v. Chicago,* 173 Ill. 91, 50 N. E. 256, 40 L. R. A. 621.) The following authorities will be found to sustain the rule that public agents stand in a different position to that of private agents and that the courts and all persons must take notice of their powers and be governed by them: *Whitehead v. · United States,* 93 U. S. 882; *Lee v. Munroe,* 7 Cranch, 366; Story on Agency, sec. 307; *State v. Hays,* 52 Mo. 578; Meachem on Public Officers, sec. 843; *Cook County v. Chicago,* 158 Ill. 524, 42 N. E. 67.)

QUARLES, J.—This action was commenced by the First National Bank of Pocatello, a corporation, plaintiff, against C. Bunting & Co., bankers, a corporation, defendant, to recover a debt due from the defendant to the plaintiff. The defendant corporation being insolvent, C. E. Thum was appointed the court's receiver, to take charge of the assets of said defendant corporation, which, after qualifying, he proceeded to do. The state of Idaho intervened, alleging that said receiver took charge of, and was in possession, as receiver, of, certain moneys owned by the state, and withheld and refused to pay same to the state, and demanded an order directing said receiver to pay over to the state treasurer the said moneys of the state before distribution among the creditors of the said insolvent. The district court decided the contention against the state, and the state appealed to this court. Upon said appeal we held that public money deposited by a public officer in a bank becomes a trust fund, and not part of the estate of the bank, and in case of the insolvency of the bank its receiver must treat such fund as the property of the true owner, and that creditors of such bank were not to share *pro rata* in public money deposited in such bank. (See *State v. Thum*, 6 Idaho, 323, 55 Pac. 858.) After the said decision, the respondents here, Bingham county, Custer county, and Fremont county, each intervened in this action, claiming, each for itself, that public money belonging to it was deposited with the defendant corporation, and thence came into the hands of said receiver. Upon a hearing of said petitions in intervention, the court rendered and made its several jugments, ordering and directing said receiver to pay each of said respondent counties the public moneys belonging to each which were deposited with said bank as follows, to wit: To Custer county, the sum of $12,241.02; to Bingham county, the sum of $35,647.86; to Fremont county, the sum of $3,627.67; and to Bingham county, on relation of E. P. Coltman, sheriff, etc., the sum of $1,326.26. Each of said judgments directed said receiver to pay said amounts, respectively, to said counties forthwith; but, instead of doing so, said receiver, without regard to said judgment, and without regard to the decision of this court in *State v. Thum*, cited

*supra,* has appealed to this court from each of said judgments. The position of each of the respondent counties is the same as was that of the state, and the decision in that case is conclusive of the merits of these four appeals, which have been argued, submitted, and considered together; and on the authority of the decision in *State v. Thum,* 6 Idaho, 323, 55 Pac. 858, which is hereby affirmed, each of said judgments must be affirmed.

We feel it unnecessary to add anything to what was said in *State v. Thum,* so far as the main contention before us is concerned. But it is contended by the receiver that, inasmuch as the treasurer of Bingham county received a dividend or *pro rata* payment, the same as an ordinary creditor, from the receiver, it is estopped to claim that the public money which it had in said bank is a trust fund. To this we say that such act of the treasurer does not estop the county from claiming such money as a trust fund. By receiving such *pro rata* payment, the treasurer does not affect the rights of the county to any greater extent than he does by assuming to make a general deposit for the purpose of transferring the title of the fund from his principal without its consent, and in violation of law. By neither of said acts can a county official create the relation of debtor and creditor between the public and the bank. Hence, the public money of Bingham county deposited in said bank was a trust fund, and so remained after the receivership.

We now come to a question which is not discussed in the briefs, but apparent upon the record, and which we feel it our duty to notice; and that is the fact that these four appeals are prosecuted by the receiver without an order of court permitting him to do so. It should be borne in mind that this is not an action against the receiver, but that in this action the receiver was appointed. Then the receiver has no personal interest in the judgment from which he appeals. It is of no personal interest to the receiver whether he pays the money mentioned in the several judgments to the respondent counties, or whether he pays them to the general creditors. It was his duty to obey the orders of the court appointing him, of which he is only an agent. He had no right to appeal from said orders. The law

upon this point is tersely stated by Mr. High on Receivers, in section 264, where, *inter alia,* it is said: "But, since he is the mere servant or agent of the court, he will not be allowed of his own volition to appeal from an order made in the progress of the cause in which he is appointed. When, therefore, without authority of the court he prosecutes such an appeal, it may be dismissed on motion." The appellate court should dismiss such an appeal of its own motion. In view of the decision in *State v. Thum,* cited *supra,* the action of the receiver and of his attorney in bringing these appeals here savors somewhat of contempt. Every question raised here is disposed of in *State v. Thum,* and there settled. Hence, it is apparent that these appeals are not prosecuted in good faith, but for the purpose of delay. Under the circumstances of this case, the burden of taking these appeals, including all costs and attorney's fees, must not be borne by or imposed upon the insolvent estate, but the receiver must pay all costs of this appeal personally, and the attorney for the receiver upon these appeals must look to the receiver personally for such fees, if any, as he may be entitled to, and no part of the same must be allowed against the estate in the hands of said receiver. Each of the judgments appealed from is affirmed, with costs to respondents, and it is ordered that *remittitur* herein be forthwith issued by the clerk of this court, directed in the usual form.

Huston, C. J., and Sullivan, J., concur.

Per CURIAM.—We have considered the petition for a rehearing filed herein, and have examined all of the authorities cited therein. We do not think the authorities cited sustain the claim of petitioner. Petitioner cites as follows from 17 Encyclopedia of Pleading and Practice, page 885: "Where a receiver . . . . contests a suit with leave of court, he is entitled to appeal from a judgment adverse to the interests which he represents"; and refers to the following cases cited as supporting such statement: *Becker v. Hoke,* 80 Fed. 973, 26 C. C. A. 282; *Shields v. Coleman,* 157 U. S. 168, 15 Sup. Ct. Rep. 570, 39 L. ed. 660; *Arnold v. Weimer,* 40 Neb. 216, 58 N. W. 709. The text in 17 Encyclopedia of Pleading and Practice, page

885, is as follows: "Where a receiver has intervened, and contests the suit with leave of court, he is entitled to appeal from a judgment adverse to the interests which he represents." In the case of *Becker v. Hoke,* the receiver intervened, and an appeal was allowed by the court. In *Shields v. Coleman,* 157 U. S. 168, 15 Sup. Ct. Rep. 570, 39 L. ed. 660, the single question involved was the jurisdiction of the federal court to appoint a receiver, and take the railroad property out of the possession of the receiver appointed by the state court—a contest between receivers. An appeal was allowed by the circuit court. In *Arnold v. Weimer,* the receiver intervened to procure the dissolution of an attachment against the property of the corporation of which he had been appointed receiver. An examination of these authorities will show that they have no applicability to the case under consideration. Petitioner cites High on Receivers, second edition, section 264. In the opinion in this case the court cites the same section from High on Receivers, third edition, which is adverse to the contention of petitioner. In each of the answers filed by the appellant, as receiver, to the respective petitions of the respondents, it is alleged that such answer is filed by leave of the court. But nowhere in the record does it appear that the district court authorized the receiver to bring these appeals to this court. Inasmuch as the vital questions of law raised by the respective petitions of the respondents in this case had been determined by the appeal taken by the state in this case (see *State v. Thum,* 6 Idaho, 323, 55 Pac. 858), and there were no questions of fact in dispute, an order if it had been made, by the district court, permitting these appeals by the receiver, would have been erroneous. We are unable to find in the case made by the petition, or in the authorities cited therein, any warrant for granting a rehearing, and the same is denied.