### KANSAS CITY SOUTHERN RY. CO. v. LUSK et al.

(Circuit Court of Appeals, Eighth Circuit.   July 9, 1915.)

No. 4346.

1. APPEAL AND ERROR ☜919—PRESUMPTIONS—PLEADING—MOTIONS TO STRIKE —EFFECT.

Where paragraphs presenting a defense were on motion stricken from the answer, whatever facts contained therein were well pleaded must on appeal be taken as true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3713; Dec. Dig. ☜919.]

2. RAILROADS ☜208—RECEIVERS—CONTRACTS—RENUNCIATION.

The receivers of an insolvent railroad company applied for leave to disaffirm and renounce a contract whereby the corporation had leased terminal facilities from the appellant, on the ground that the contract was burdensome to the company; it having acquired its own terminal facilities for those places. The contract was one not binding on the receivers until assumed under direction of the court. The insolvent company had acquired its own terminal facilities some 14 years before the application. *Held* that, as the matter was one of business expediency, the court would not investigate, on the ground that the receivers did not come into court with clean hands, the question whether the property was acquired in violation of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 685–691; Dec. Dig. ☜208.]

3. MONOPOLIES ☜16—ANTI-TRUST LAWS—VIOLATION.

Where a railroad system becomes insolvent, the court does not, by taking possession of the property through its receiver and operating it, violate the anti-trust laws of the state or federal government, though the insolvent corporation acquired some of its mileage in violation of such laws.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. ☜16.]

4. APPEAL AND ERROR ☜101—DECISIONS APPEALABLE—ORDERS.

An order whereby a receiver of an insolvent railroad corporation was authorized to renounce a contract for the renting of terminal facilities is appealable; the decision being final in its nature, in view of the fact that such contract was practically ended.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 681–687; Dec. Dig. ☜101.]

---

Appeal from the District Court of the United States for the Eastern District of Missouri; Walter H. Sanborn, Judge.

Application by James W. Lusk and others, receivers of the St. Louis & San Francisco Railroad Company, to disaffirm and renounce a contract with the Kansas City Southern Railway Company. From an order granting the application, the Railway Company appeals. Affirmed.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. H. Moore, of Kansas City, Mo. (Samuel W. Moore, of Kansas City, Mo., on the brief), for appellant.

Edward T. Miller, of St. Louis, Mo. (W. F. Evans, of St. Louis, Mo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and LEWIS and BOOTH, District Judges.

CARLAND, Circuit Judge. This appeal arises out of an application on the part of the receivers of the St. Louis & San Francisco Railroad Company, hereafter called the Frisco, to disaffirm and renounce a contract entered into February 28, 1898, between the predecessors of the Kansas City Southern Railway Company, hereafter called the Southern, and the predecessors of the Frisco, and other contracts supplemental thereto, whereby the predecessors of the Southern Company granted to the predecessors of the Frisco the right to use the depots and terminals of the predecessors of the Southern Company at a minimum monthly rental of $3,000 per month. The duty of the receivers to renounce the contract was approved by the District Court, and the Southern Company appealed.

[1-3] There is no question here but that the right of the receivers to renounce the contract is supported by sound administrative and business principles, conceding the use by the receivers of the terminals of the old Kansas City, Ft. Scott & Memphis Railroad, acquired by the Frisco in 1901, is lawful. The Southern, by its answer to the application of the receivers, and during the subsequent proceedings, contended that the only reason that the contract of 1898 had become burdensome to the Frisco was because of the acquirement by it in 1901 of the Kansas City, Ft. Scott & Memphis Road, which gave the Frisco terminals at Kansas City over its own rails thereby causing a diversion of traffic which rendered the use of the terminal facilities granted by the contract of 1898 largely unnecessary. It was further contended that the acquirement of the Ft. Scott & Memphis by the Frisco, owing to the ownership by the Frisco of the Kansas City, Osceola & Southern Railway, was in violation of section 17, art. 12, Const. Mo., and section 3081 of the Revised Statutes of Missouri for 1909, and also in violation of the act of Congress of July 2, 1890, relating to trusts and monopolies. It is therefore argued that, as the receivers were using the Ft. Scott & Memphis terminals, acquired by the Frisco in 1901, they did not come into court with clean hands in asking that the receivers be allowed to renounce the contract of 1898. The paragraphs which presented this defense were on motion struck out of the answer, and hence on this appeal whatever facts were contained therein which were well pleaded must be taken as true.

It is well not to lose sight of the question which the District Court had before it. It was simply whether the court in its discretion and as a business proposition would continue to perform the contract of 1898. The contract was not one binding on the receivers until renounced, but was one not binding on them until assumed under the direction of the court. In this condition of the case, to hold that the court could be asked to investigate the circumstances attending the acquire-

ment of the Ft. Scott & Memphis by the Frisco after the lapse of 14 years, not for the purpose of enforcing the Anti-Trust Law, but to enable it to decide whether it would as a matter of business assume the performance of the contract, .would be to decide a matter irrelevant to the issue before the court. The Southern has no interest in the enforcement of the anti-trust laws, other than to use them to prevent, if possible, the disaffirmance by the receivers of the contract of 1898. Therefore we view with some moderation its allegation that the receivers do not come into court with clean hands. Moreover, the District Court took possession of the whole Frisco System through its receivers for a specific purpose. The whole system belonged to the Frisco. The court violated no anti-trust law of the United States or Missouri in taking possession of or in operating the Frisco System, as a reference to those laws will clearly show.

[4] The point is made that the order appealed from is not appealable. The order, of course, did not affect the validity of the contract between the Southern and the Frisco, but simply refused performance thereof on the part of the receivers. Still the effect of the order was to suspend a payment of $36,000 per annum on a contract which had 10 years to run before its expiration. We think we may take judicial knowledge of the fate of contracts made by an insolvent railroad company which passes into the hands of a receiver and are not assumed by him. Such contracts are practically ended. We therefore think the order was appealable. Felton v. Ackerman, 61 Fed. 225, 9 C. C. A. 457; General Electric Co. v. Whitney, 74 Fed. 664, 20 C. C. A. 674; Kirkpatrick v. Eastern Milling & Export Co. (C. C.) 135 Fed. 151.

Order affirmed.